John N. Zarian, ISB No. 7390
PARSONS BEHLE & LATIMER
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
Email:  jzarian@parsonsbehle.com

*Attorneys for Relators and Plaintiffs
Katie Brooks and Nannette Wride*

Brandon J. Mark (pro hac vice)
Joseph M. Stultz (pro hac vice)
Alissa M. Mellem (pro hac vice)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email:  bmark@parsonsbehle.com
          jstultz@parsonsbehle.com
          amellem@parsonsbehle.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah Corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., a Utah Corporation; COLLEGEAMERICA DENVER, INC., a Colorado Corporation; COLLEGEAMERICA ARIZONA, INC., a Colorado Corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation; CARL BARNEY, an individual; SHAW, MUMFORD & CO., P.C., an expired Utah Professional Corporation; SHAW & CO., P.C., a Utah Professional Corporation; PRICEWATERHOUSECOOPERS LLP, a Delaware Limited Liability Partnership; and DOES 1-500, Inclusive,<br><br>Defendants. | Case No. 1:13-cv-00009-BLW<br><br>**RESPONSE TO DEFENDANT SCHOOLS' MOTION TO SEAL CERTAIN EXHIBITS TO UNITED STATES' COMPLAINT IN INTERVENTION (ECF #76)** |

Plaintiffs and Relators Katie Brooks and Nannette Wride ("Relators") respectfully submit this Response to Defendant Schools' Motion to Seal Certain Exhibits to the United States' Complaint in Intervention (ECF #76).

## INTRODUCTION

Relators do not take a position on the ultimate question of whether the Court should seal the exhibits attached to the United States of America's Complaint in Intervention that Defendant Schools have identified in their Motion to Seal ("Motion"). However, because Defendant Schools' briefing contains inaccurate factual statements concerning the identified exhibits, Relators are compelled to bring additional information to the Court's attention.

## APPLICABLE LEGAL STANDARD

Defendant Schools concede that their Motion should be judged under the higher "compelling reasons" standard, rather than the lower "good cause" standard. (Defs.' Mem. 1, 3, 5, 6 (arguing "compelling reasons" standard)); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (explaining the different standards that apply to motions to seal); *see also In re NVIDIA Corp. Derivative Litig.*, No. C 06–06110 SBA, 2008 WL 1859067, at *3 (N.D. Cal. Apr. 23, 2008) (applying "compelling reasons" standard in evaluating request to seal complaint).[1]

---

[1] Notably, the cases that Defendant Schools reference do not support their position. In *Davis v. Soc. Serv. Coordinators, Inc.*, 1:10-CV-02372-LJO, 2012 WL 2376217, at *1 (E.D. Cal. June 22, 2012), the court applied a "good cause" standard to documents appended to a non-dispositive motion, not the "compelling reasons" standard applicable here. In *Rich v. Shrader*, CIV. 09CV652 AJB BGS, 2013 WL 6028305, at *2-3 (S.D. Cal. Nov. 13, 2013), the court partially denied the motion to seal with respect to information "already a part of the public records."

Defendant Schools contend that they satisfy the "compelling reasons" standard because the exhibits they want to seal constitute or reflect the Schools' trade secrets. (Defs.' Mem. 4-5.) Although the Ninth Circuit Court of Appeals has recognized that it is proper to seal records that could reveal a party's trade secrets, *Kamakana*, 447 F.3d at 1179,[2] the court has also recognized that the principles stated in the Restatement of Law properly define whether, in fact, a protectable trade secret exists in this circumstance, *In re Elec. Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008).

It is axiomatic, and rather obvious, that "[t]o qualify as a trade secret, the information must be secret." Restatement (Third) of Unfair Competition § 39, cmt. f (1995). As a result, "[i]nformation that is generally known or readily ascertainable through proper means," such as "information that is disclosed in . . . published materials reasonably accessible to competitors[,] does not qualify for protection." *Id*.

Additionally, and relatedly, "[p]recautions taken to maintain the secrecy of information are relevant in determining whether the information qualifies for protection as a trade secret." *Id.* cmt. g. Such precautions usually involve "physical security designed to prevent unauthorized access, procedures intended to limit

---

[2] Defendants also contend generally that the records contain "proprietary" and "competitively sensitive" information, but the Ninth Circuit has never recognized protection for such broad and amorphous categories. Instead, the relevant factors, which this Court "must weigh," include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or *infringement upon trade secrets*." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 & n.6 (9th Cir. 2010) (emphasis added) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

disclosure based upon the 'need to know,' and measures that emphasize to recipients the confidential nature of the information such as nondisclosure agreements, signs, and restrictive legends." *Id.*

## STATEMENT OF FACTS

Defendant Schools ask the Court to seal Exhibits D through K to the government's Complaint in Intervention. According to Defendant Schools, the exhibits consist of Admissions Consultant Manuals, as well as "Procedure Directives, Information Letters, and other documents [that] are components of the Admission Consultant Manuals" and documents "extracted" from such manuals. (Defs.' Mem. 3 & n.4.)

However, three of the eight exhibits that Defendant Schools seek to keep sealed are *currently available to the public* via this Court's files. Copies of Exhibits F, I, and J to the United States' Complaint in Intervention are appended to Relators' publicly available Second Amended Complaint as Exhibits 5 and 6.[3] (Exhibit J is simply one page extracted from Exhibit 5, which is the same as Exhibit F.) Defendant Schools have failed to make a motion to seal the exhibits attached to Relators' complaint, and they have made no other efforts to protect the

---

[3] Exhibits 5 and 6 were also attached to Relators' First Amended Complaint, which was unsealed and made available to the public on April 8, 2014 (ECF #24). Relators' Exhibit 5 is the same as Exhibit F to the government's complaint and substantially similar to Exhibits D, E, and G. While Exhibits D, E, and G are formatted slightly differently and contain some revisions, they are by and large the same as Exhibit 5/Exhibit F.

4

confidentiality of those documents.[4] Defendant Schools have been aware that those exhibits are publicly available since at least April 8, 2014 (ECF #24) and have taken no actions to assert confidentiality protections over them. Stated plainly, Defendant Schools have not undertaken reasonable steps to maintain the putative confidentiality of such exhibits.

Additionally, the website of the San Diego Union Tribune—the premier newspaper of San Diego, California—has had copies of Relators' exhibits available to the public for a month. The newspaper's electronic version of its article about the instant litigation has a link to download "California College San Diego Recruitment Documents," which includes portions of Exhibits 5 and 6 to Relators' Second Amended Complaint (and, consequently, Exhibits F, I, and J to the United States' Complaint in Intervention).[5] Thus, anyone with an Internet connection can download portions of Defendant Schools' supposedly trade secret information. As far as Relators can discern, Defendant Schools have made no efforts to have the website take down the exhibits or otherwise make them publicly unavailable. Relators' counsel last visited the website on September 2, 2014, and the documents were still publicly available.

---

[4] To be clear, Relators obtained their copies of the exhibits from sources other than the United States government. In other words, Exhibits 5 and 6 to Relators' Second Amended Complaint did *not* originate with the government or the documents that Defendant Schools produced to the government in response to its subpoena.

[5] The direct hyperlink to the San Diego Union Tribune's article can be found here: http://www.utsandiego.com/news/2014/aug/02/california-college-san-diego-enrollment-incentives/2/?#article-copy. However, the article can also be located by searching from the newspaper's main webpage.

Moreover, Defendant Schools have generally failed to take the necessary precautions to qualify Exhibits D through K for trade secret protection. Defendant Schools failed to inform the employees to whom they gave the Admissions Consultant Manuals that the manuals were considered confidential, proprietary, or trade secret protected. (Declaration of Nannette Wride ¶¶ 3-5 ("Wride Decl."), submitted herewith; Declaration of Debbi Potts ¶ 6 ("Potts Decl."), submitted herewith; Declaration of Craig Hinson ¶ 3 ("Hinson Decl."), submitted herewith.) Indeed, Defendant Schools failed to even inform at least some Campus Directors and Directors of Admissions (who supervised Admissions Consultants) that the Admissions Consultant Manuals were considered confidential, trade secret protected, or proprietary. (Potts Decl. ¶¶ 3-4.)

Defendant Schools failed to treat the Admissions Consultant Manuals as trade secrets in other ways as well. For example, Relator Katie Brooks was encouraged by her supervisor to take the manual home to study it. (Declaration of Katie Brooks ¶¶ 4, 6 ("Brooks Decl."), submitted herewith.) Likewise, other employees of Defendant Schools were encouraged to take copies of the Admissions Consultant Manuals home with them to refer to. (Potts Decl. ¶ 10.)[6] Defendant Schools failed to number or otherwise track the Admissions Consultant Manuals that they circulated to their numerous Admissions Consultants. (Wride Decl. ¶ 6; Potts Decl. ¶ 8; Hinson Decl. ¶ 7; Brooks Decl. ¶ 3.) Defendant Schools never asked

---

[6] In *Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996), the Ninth Circuit upheld a finding that employee manuals did not qualify for trade secret protection because employees "were allowed to take the job manuals home and keep them."

6

their employees to return the Admissions Consultant Manuals at the conclusion of their employment. (Wride Decl. ¶ 8; Hinson Decl. ¶ 9; Brooks Decl. ¶ 8.)

Although Defendant Schools marked the exhibits attached to the United States' Complaint in Intervention with confidentiality designations before disclosing them in response to the government's subpoena in this case (Defs.' Mem. 2 n.2), Defendant Schools failed to mark the *original* exhibits with any type of confidentiality designation or legend before distributing them to likely more than a hundred Admission Consultant employees. None of the Admission Consultant Manuals contains any type of notation—either on the cover page or elsewhere—indicating that Defendant Schools considered the manuals to be confidential, trade secret protected, or proprietary in nature.[7] (*See generally* Exs. D - K.) While the standard practice for communicating to employees that a particular document contains trade secret or confidential information is to mark each page with a "Confidential" or similar type of legend, none of the exhibits that Defendant Schools seek to seal contained such designations when they were originally distributed.[8]

---

[7] Although the 2008-2009 and 2010-2011 manuals (Exs. F & G) contain a warning on their covers that "unauthorized use or copying is strictly prohibited," the 2006 and 2007 manuals (Exs. D & E) contain no such language. Furthermore, the warnings on the 2008-2009 and 2010-2011 manuals do not suggest that the manuals are confidential or contain proprietary or trade secret information; instead, the language appears alongside a standard copyright notice.

[8] "[A]n employer's failure to mark documents as confidential or trade secret 'precludes in many cases trade secret protection for those materials.'" *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) (quoting *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 559 (N.D. Cal. 1999) (citing *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1557 (10th Cir. 1993))).

While Defendant Schools' Motion emphasizes that they regularly require employees to sign confidentiality agreements,[9] and even go so far as to attach the confidentiality agreement signed by Relator Brooks, Defendant Schools fail to identify any language in the confidentiality agreement specifying that Admissions Consultant Manuals are considered confidential. Nowhere in the confidentiality agreement signed by Relator Brooks are Admission Consultant Manuals referenced. Moreover, Defendant Schools never required their employees to sign any type of form or acknowledgment stating that the Admission Consultant Manuals were covered by any confidentiality agreements. (Wride Decl. ¶ 7; Potts Decl. ¶ 7, 11; Hinson Decl. ¶ 8; Brooks Decl. ¶ 7.)

Additionally, while the confidentiality agreement requires employees to return confidential materials "upon the termination of th[e] Agreement" (paragraph 4(f)), it contains no provision specifying how or when the agreement can be terminated. Although the confidentiality agreement allows Defendant Schools to require employees to certify in writing that they have returned all confidential materials to the Schools (*id.*), Defendant Schools offer no evidence that they have ever asked any employee to so certify.[10] Numerous former employees were never

---

[9] Merely requiring employees to sign confidentiality agreements, without more, does not demonstrate reasonable efforts to maintain secrecy under trade secret principles. *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 700 (S.D. Ga. 1997); *Tradesmen Int'l, Inc. v. Black*, 10-2098, 2011 WL 5330589 (C.D. Ill. Nov. 7, 2011) ("It is not sufficient for an employer to rely solely on confidentiality agreements with employees to maintain confidentiality of trade secrets.").

[10] Additionally, the confidentiality agreement attached to Mr. Juhlin's declaration contains glaring omissions, raising questions about its enforceability. The supposed confidentiality agreement, which is Exhibit 1 to Mr. Juhlin's declaration, contains

asked to make such certifications and were never even asked to return the Admissions Consultant Manuals at the conclusion of their employment. (Wride Decl. ¶ 8; Brooks Decl. ¶ 8; Hinson Decl. ¶ 9.)

Moreover, the exhibits that Defendant Schools seek to seal indciate that Defendant Schools intended parts of them to be revealed to the public. Indeed, they instruct the Admissions Consultants to read portions of the manuals to prospective students *verbatim* in response to questions those prospects may ask. (*See, e.g.,* Ex. D at Stevens-Henager-001452-54; Ex. E at Stevens-Henager-001785-87; Ex. F. at Stevens-Henager-001982-83; Ex. G at Stevens-Henager-002148-50.)

Finally, Relators observe that Mr. Juhlin's declaration, which is the sole evidentiary basis upon which Defendant Schools rely to satisfy the applicable "compelling reasons" standard, suffers from the same problems the Ninth Circuit Court of Appeals identified in *Kamakana*: it consists of mostly "conclusory statements about the content of the documents—that they are confidential and that, in general, their production would" visit some vague, undefined harm on Defendant Schools. 447 F.3d at 1182.[11] Like the records in *Kamakana*, many of the exhibits that Defendant Schools seek to seal are "years old." *Id.*

---

blank spaces where the parties are supposed to be identified (opening recital) and in the paragraph designating the governing state law and exclusive venue doe any disputes over the agreement (paragraph 6).

[11] Mr. Juhlin's declaration is notably vague about when Defendant Schools first began using controlled electronic access procedures for the Admission Consultant Manuals. The witnesses who provided declarations in support of this response, who worked for Defendant Schools between January 2009 and July 2012, all received hard copies of their Admissions Consultant Manuals. Evidence that Defendant Schools have recently started to take more precautions to maintain the

## CONCLUSION

Although Relators take no position on whether the Court should grant Defendant Schools' Motion, the foregoing facts appear to be relevant to the Court's consideration of the Motion under the applicable legal standards.

DATED this 2nd day of September 2014.

/s/ Brandon J. Mark
JOHN N. ZARIAN
BRANDON J. MARK
JOSEPH M. STULTZ
ALISSA M. MELLEM
PARSONS BEHLE & LATIMER
*Attorneys for Relators*

---

confidentiality of their Admissions Consultant Manuals is irrelevant to the question of whether Defendant Schools took reasonable steps to protect the confidentiality of the specific exhibits they ask this Court to seal, which are all several years old. Mr. Juhlin's declaration does not state that Defendant Schools used their electronic access procedures with any of the exhibits identified in their Motion.

## CERTIFICATE OF SERVICE

I certify that on September 2, 2014, I caused the foregoing **RESPONSE TO DEFENDANT SCHOOLS' MOTION TO SEAL CERTAIN EXHIBITS TO UNITED STATES' COMPLAINT IN INTERVENTION (ECF #76)** to be served on the following in the manner specified:

Eric B Swartz
eric@jonesandswartzlaw.com
Mark Paul Coonts
mark@jonesandswartzlaw.com
Gerald Ritzert
gritzert@ritzert-leyton.com
Steven M. Gombos
sgombos@ritzert-leyton.com
*(attorneys for defendants Center for Excellence in Higher Education, Inc., Stevens-Henager College, Inc., CollegeAmerica Denver, Inc., CollegeAmerica Arizona, Inc., California College of San Diego, Inc., and Carl Barney via the Court's CM/ECF system pursuant to LR 5.1(k))*

A. Dean Bennett
adbennett@hollandhart.com
Eric G. Maxfield
egmaxfield@hollandhart.com
*(attorneys for defendants Shaw, Mumford & Co., P.C., and Shaw & Co., P.C. via the Court's CM/ECF system pursuant to LR 5.1(k))*

Antony L. Ryan
aryan@cravath.com
Samira Shah
sshah@cravath.com
Thomas G. Rafferty
trafferty@cravath.com
Richard H. Greener
rgreener@greenerlaw.com
Thomas John Lloyd
tlloyd@greenerlaw.com
*(attorneys for defendant PriceWaterhouseCoopers LLP via the Court's CM/ECF system pursuant to LR 5.1(k))*

Wendy J. Olson, United States Attorney
Amy S. Howe, Assistant United States Attorney
Amy.Howe@USDOJ.gov
Jay D Majors
jay.majors@usdoj.gov
*(via the Court's CM/ECF system pursuant to LR 5.1(k))*

/s/ Brandon J. Mark

11