John N. Zarian, ISB No. 7390
PARSONS BEHLE & LATIMER
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone: (208) 562-4900
Facsimile: (208) 562-4901
Email: jzarian@parsonsbehle.com

*Attorneys for Relators and Plaintiffs
Katie Brooks and Nannette Wride*

Brandon J. Mark (pro hac vice)
Joseph M. Stultz (pro hac vice)
Alissa M. Mellem (pro hac vice)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email: bmark@parsonsbehle.com
      jstultz@parsonsbehle.com
      amellem@parsonsbehle.com

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>      Plaintiffs,<br><br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah Corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., a Utah Corporation; COLLEGEAMERICA DENVER, INC., a Colorado Corporation; COLLEGEAMERICA ARIZONA, INC., a Colorado Corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation; CARL BARNEY, an individual; SHAW, MUMFORD & CO., P.C., an expired Utah Professional Corporation; SHAW & CO., P.C., a Utah Professional Corporation; PRICEWATERHOUSECOOPERS LLP, a Delaware Limited Liability Partnership; and DOES 1-500, Inclusive,<br><br>      Defendants. | Case No. 1:13-cv-00009-BLW<br><br><br>**RELATORS' OPPOSITION TO SHAW'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO.98) FILED ON 10/27/14** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      APPLICABLE LEGAL STANDARD. ................................................................. 3

II.     RELATORS' CLAIMS ADEQUATELY ALLEGE THAT SHAW
        KNOWINGLY VIOLATED THE FALSE CLAIMS ACT .................................... 4

III.    RELATORS' ALLEGATIONS IN THE SAC ARE SUFFICIENT TO
        PLEAD VIOLATIONS OF THE FALSE CLAIMS ACT ................................... 8

        A.      Shaw Knowingly Caused False Claims to Be Presented to the
               Government. ............................................................................................ 9

        B.      Shaw Knowingly Made a False Statement Material to a False
               Claim ....................................................................................................... 12

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662 (2008) ........................................................................... 2

*Antioch Litig. Trust v. McDermott Will & Emery LLP*,
  738 F. Supp. 2d 758 (S.D. Ohio 2010) ................................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 3

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 4

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) .................................................. 4, 10, 14

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
  No. 13 CIV. 5023 KPF, 2014 WL 2481904 (S.D.N.Y. June 2, 2014) ...................... 8

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) .................................................................. 8

*United States ex rel. Brown v. Celgene Corp.*,
  No. CV 10-3165-GHK, 2014 WL 3605896 (C.D. Cal. July 10, 2014) ........ 10, 11, 12

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 ..................................................................................... 3

*United States ex rel. Guardiola v. Renown Health*,
  No. 3:12-CV-00295-LRH, 2014 WL 4162201 (D. Nev. Aug. 20, 2014) .................. 4

*United States ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) ............................................. 2, 10, 13, 14

*United States ex rel. Humane Soc. of U.S. v. Hallmark Meat Packing Co.*,
  No. EDCV 08-00221-VAP, 2013 WL 4713557 (C.D. Cal. Apr. 30, 2013) ................................................................................. 11

*United States ex rel. Lee v. Corinthian Colls.*,
  655 F.3d 984 (9th Cir. 2011) ....................................................passim

*United States ex rel. Marcus v. Hess,*
    317 U.S. 537 (1943) ........................................................................ 10

*United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.,*
    696 F. Supp. 2d 1190 (D. Idaho 2010) ............................................ 9, 10

*United States ex rel. Schmidt v. Zimmer, Inc.,*
    386 F.3d 235 (3d Cir. 2004) ........................................................... 11

*United States ex rel. Suter v. Nat'l Rehab. Partners Inc.,*
    No. CV-03-015-S-BLW, 2009 WL 3151099 (D. Idaho Sept. 24, 2009) ................. 10

*United States ex rel. Wall v. Circle C. Const., LLC,*
    697 F.3d 345 (6th Cir. 2012) ......................................................... 2

*United States v. Mackby,*
    261 F.3d 821 (9th Cir. 2001) ...................................................... 9, 10

## STATUTES

20 U.S.C. §§ 1094 ............................................................................ 15

31 U.S.C. § 3729 ......................................................................... passim

Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123
    Stat. 1617 (2009) ....................................................................... 2

## OTHER AUTHORITIES

34 C.F.R. § 668.14(a)(1) ................................................................. 14

34 C.F.R. § 668.23(a)(2) ................................................................. 14

Federal Rule of Civil Procedure 8 ................................................... 2, 3, 4

Federal Rule of Civil Procedure Rule 9(b) ................................. 2, 3, 4, 7, 8

Plaintiffs and Relators Katie Brooks and Nannette Wride ("Relators") respectfully submit this Response to Defendant Shaw, Mumford & Co., P.C., and Defendant Shaw & Co., P.C.'s (collectively, "Shaw") Motion to Dismiss the Second Amended Complaint ("SAC") (ECF No.98) filed on October 27, 2014 (the "Motion").

## INTRODUCTION

Defendant Schools are annually required to undergo two forms of audit pursuant to statutory and regulatory requirements—a financial audit and a compliance audit. In 2007 and 2008, Shaw performed both the financial audit and the compliance audit. Shaw certified that its audits were conducted in accordance with certain government and professional standards. They weren't.

In its Motion, Shaw mischaracterizes the essential nature of Relators' allegations against Shaw and the other auditors. Contrary to Shaw's assertions, Relators do not allege that Shaw is liable merely because Defendant Schools' compensation practices violated the laws and regulations that Shaw was engaged to audit. Instead, Relators allege that Shaw certified to the United States Department of Education (the "Department") that it performed certain specific audit procedures to determine whether Defendant Schools were paying bonuses to employees involved in recruiting students but that Shaw failed to actually perform those procedures. (SAC ¶ 396.)

Shaw argues that it escapes liability because it did not intend to defraud the Department, pointing to supposed deficiencies in the SAC. Under the False Claims Act ("FCA"), liability attaches to any person who "knowingly presents, or causes to

1

be presented, a false or fraudulent claim for payment or approval,"[1] 31 U.S.C. § 3729(a)(1)(A), and liability attaches to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B). As explained below, Shaw's false certifications concerning its audit work both (1) "caused" Defendant Schools to present false claims to the government within the meaning of § 3729(a)(1)(A), and (2) constitute a "false record or statement material to a false or fraudulent claim" under § 3729(a)(1)(B).

Despite Shaw's arguments to the contrary, Relators' SAC is legally sufficient. Specifically, (1) Relators' scienter allegations meet the requirements of Rule 8 and 9(b), (2) Relators' allegations that Shaw caused a false claim to be filed are sufficiently pled, and (3) Relators' allegations that Shaw made false statements that were material to a false claim are also adequately pled.

Finally, although the allegations contained in the SAC are more than

---

[1] The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), made amendments to the FCA that were enacted on May 20, 2009. While Shaw's conduct at issue relates to 2007 and 2008 compliance audits, Shaw submitted those audits in June of 2008 and 2009, respectively. FERA amendments are therefore arguably applicable to the 2008 audits. However, the FERA amendments do not change the analysis here. FERA broadened the FCA to include false records or statements material to a false claim, which the Ninth Circuit had already so held in *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1175–76 (9th Cir. 2006). The FERA amendments also eliminated the intent requirement imposed by the Supreme Court's opinion in *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008). *See, e.g., United States ex rel. Wall v. Circle C. Const., LLC*, 697 F.3d 345, 355 n.3 (6th Cir. 2012) ("Congress replaced the words 'to get' in the former version with 'material to,' thereby eliminating this intent requirement."). Shaw is liable under either version of the statute.

sufficient under Ninth Circuit precedent and adequately state claims against Shaw under Rules 8 and 9(b) of the Federal Rules of Civil Procedure, Relators seek leave to file a Third Amended Complaint ("TAC") to add additional detail to their allegations against Shaw and the other auditors. Additional details include information about the Shaw employee involved in the relevant conduct, the time period of the employee's actions, the specific information available to Shaw and when it became available, and the particular false statements Shaw made to the Department and when they were made. Relators offer this additional detail not because it is required but because it obviates Shaw's groundless objections about the supposed lack of allegations specific to Shaw's conduct.

**ARGUMENT**[2]

## I.   APPLICABLE LEGAL STANDARD.

"Under the pleading requirements of Federal Rule of Civil Procedure 8, [the court] must determine whether the [c]omplaint contains 'sufficient factual matter' that, taken as true, 'state a claim for relief is plausible on its face.'" *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) ("*Corinthian Colleges*") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (alteration in original) (citation and internal quotation marks omitted)); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (A False Claims Act complaint "must, in addition to pleading with particularity, also plead plausible allegations"

---

[2] Shaw joins PricewaterhouseCoopers' arguments in support of its motion to dismiss, as outlined in ECF No. 97. For that reason, Relators incorporate by reference Relators' opposition to PricewaterhouseCoopers' motion in its entirety and only elaborate herein to provide clarity as to Shaw's specific arguments against liability.

3

that "state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'" (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007))).

The ultimate standard under Rule 9(b) is whether the complaint "is specific enough to give [the defendants] notice of the particular misconduct which is alleged to constitute the fraud so that they can defend against the charge." *United States ex rel. Guardiola v. Renown Health*, No. 3:12-CV-00295-LRH, 2014 WL 4162201, at *8 (D. Nev. Aug. 20, 2014); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (a complaint satisfies Rule 9(b) where it "provides enough detail to give [the defendant] notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong." (internal quotation marks omitted)).

## II.  RELATORS' CLAIMS ADEQUATELY ALLEGE THAT SHAW KNOWINGLY VIOLATED THE FALSE CLAIMS ACT.

Shaw's first contention is that the allegations in the SAC regarding Shaw's knowledge fail under Rule 8(a)(2) and Rule 9(b) because Relators "do not specify what information Shaw knew about Defendant Schools' compensation practices—the essence of a scienter allegation." (Shaw Mem. 7).

The *Corinthian Colleges* decision addressed Shaw's argument that Relators' SAC failed to plead the "knowledge" element of Shaw's conduct with particularity under Rule 9(b). In that case, the Ninth Circuit noted that "scienter can be alleged generally." 655 F.3d at 996.

Contrary to Shaw's protests, the SAC contains more than adequate factual

allegations to establish that Shaw acted with knowledge when it submitted false statements to the Department about the audits it had performed of Defendant Schools.

First, Shaw knew that it had to conduct its compliance audits of Defendant Schools pursuant to various auditing standards, including the Department's Audit Guide (SAC ¶¶ 387–89); that the primary objective of its audit was to "determine and report whether" Defendant Schools were complying with various laws and regulations, including, specifically, the Incentive Compensation Ban (SAC ¶¶ 390– 91, 393); and that it was required to report to the Department about any "indication" of a violation of the applicable laws and regulations, including any payments of bonuses contrary to the Incentive Compensation Ban (SAC ¶¶ 392– 93).[3]

Moreover, Shaw knew that it was required to "'[t]est payroll and other disbursement records to determine whether the institution paid to any persons or entities any commission, bonus, or other incentive payment based directly or indirectly on success in: securing enrollments, financial aid to students or student retention.'" (SAC ¶ 394 (quoting Audit Guide at II-7)). Relators allege in the SAC that Shaw "knowingly" failed to properly assess whether the Defendant Schools

---

[3] Although Shaw criticizes the SAC for allegations generally directed to all of the auditors (Shaw Mem. 12), all of the auditors were bound by and aware of the same guidelines, standards, and rules, which are cited and referenced in the SAC. Since the allegations apply generally to all of them, it would be inefficient and unnecessarily prolix to allege the same basic standards against each of the auditor defendants individually. Nevertheless, Relators' proposed Third Amended Complaint contains significant allegations specific to Shaw and each of the other auditors. (TAC ¶¶ 348–406).

were paying bonuses to employees engaged in admissions and financial aid activities and that Shaw issued compliance audits reports "knowing them to be false . . . or in reckless disregard of the truth or falsity of the information" with respect to the Schools' compliance with the Incentive Compensation Ban. (SAC ¶¶ 396, 399.)

Importantly, Relators allege in the SAC that Shaw had knowledge that

> (1) Defendant Schools derived a substantial portion of their revenues from Title IV, [Higher Education Act ("HEA")] programs; (2) a large majority of students attending Defendant Schools paid for their education, at least in part, with Title IV funding; (3) Defendant Schools expended large amounts on AC compensation; and (4) a large proportion of Defendant Schools' compensation for ACs was denominated as "bonuses."

(SAC ¶ 398.) The SAC further alleges that Shaw "intended for the [Department] to rely on [its] audit opinions and statements." (SAC ¶ 400.)

The *Corinthian Colleges* court determined that the complaint in that case "sufficiently allege[d] scienter as to" the auditor based on *just three* allegations. 655 F.3d at 999. First, the complaint that the auditor issued reports to the government "'knowing them to be false and/or in reckless disregard of the truth or falsity of the information provided to the United States.'" *Compare id. with* (SAC ¶ 399 (Shaw "issued compliance audits . . . knowing them to be false with respect to Defendant Schools' compliance with the Incentive Compensation Ban or in reckless disregard of the truth.")).

Second, the *Corinthian Colleges* complaint alleged that the auditor "had knowledge of the amount of money [the audited school] received from HEA funds."

*Compare* 655 F.3d at 999 *with* (SAC ¶ 398 (Shaw "knew that . . . Defendant Schools derived a substantial portion of their revenues from Title IV, HEA programs.")).

Third, the *Corinthian Colleges* complaint alleged "the manner in which th[e HEA] money was spent on recruiter compensation." *Compare* 655 F.3d at 1000 *with* (SAC ¶ 398 (Shaw "knew that . . . Defendant Schools expended large amounts on AC [Admission Consultant (recruiter)] compensation" and "a large proportion of Defendant Schools' compensation for ACs was denominated as 'bonuses.'")). These three factual allegations, "taken together, support a 'plausible' inference that the [auditor] acted with fraudulent intent" the Ninth Circuit concluded in *Corinthian Colleges*. 655 F.3d at 1000.

Shaw knowingly failed to perform professionally competent audits of Defendant Schools; knowingly failed to identify or follow up on high risk indicators of fraud and knowingly failed to notify the Department as required; issued compliance audit opinions knowing them to be false or in reckless disregard of the truth or falsity of the information they provided to the Department on this subject; and made false certifications of compliance to the Department in order for Defendant Schools to receive Title IV funding. (SAC ¶¶ 396–400.) These allegations support more than a "plausible inference" that Shaw acted with fraudulent intent.

Shaw next contends that the SAC's allegations based on information and belief are "not permitted under Rule 9(b)." (Shaw Mem. 11.) But allegations based on information and belief are sufficient under Rule 9(b) so long as they "state the

factual basis for the belief."[4] *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Here, part of the factual basis for Relators' beliefs concerning Shaw's actions stem from the various accounting regulations and standards with which Shaw agreed to comply. (SAC ¶¶ 387–95 (citing specific provisions of the Department Audit Guide, the U.S. General Accounting Office's *Government Auditing Standards*, and the *Statements on Standards for Attestation Engagements* from the American Institute of Certified Public Accountants)). As the *Corinthian Colleges* court recognized, by "citing to financial accounting standards, the [c]omplaint provides details as to what practices are being challenged . . . and what practices should have been used in their place." 655 F.3d at 999.

Because Rule 9(b) allows a defendant's knowledge and scienter to be pled generally, and because Relators provide the factual basis for their allegations made on information and belief, Shaw's first argument fails.

## III.   RELATORS' ALLEGATIONS IN THE SAC ARE SUFFICIENT TO PLEAD VIOLATIONS OF THE FALSE CLAIMS ACT.

Shaw next contends that Relators' claims fail because Shaw did not personally present a claim to the government for payment. (Shaw Mem. 2.) Shaw also argues that Relators' false certification theory fails because Shaw did not

---

[4] "[Q]ualifying words such as 'upon information and belief' . . . are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts." *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010); *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, No. 13 CIV. 5023 KPF, 2014 WL 2481904, at *8 (S.D.N.Y. June 2, 2014) ("It is also of no moment that many of [the plaintiff's] allegations are predicated 'upon information and belief'" since "[p]refacing allegations with this standard pleading qualification does not eviscerate the sufficiency of a complaint.").

"certify" Defendant Schools' compliance with the requirements of Title IV of the HEA and because Shaw's audit and attestation reports were not prerequisites to payment by the government.

But Shaw misunderstands Relators' theory of liability. Instead, Relators have alleged that (1) Shaw caused Defendant Schools to present false claims to the government under 31 U.S.C. § 3729(a)(1)(A), and (2) submitted false statements— its compliance audit reports—that were material to the Department's decision to continue making payments to Defendant Schools—under § 3729(a)(1)(B). These are two different categories of claims under the False Claims Act. Both will be discussed below.

### A.    Shaw Knowingly Caused False Claims to Be Presented to the Government.

Shaw argues that Relators' claims fail because Shaw did not personally present a claim to the government. Shaw's argument ignores controlling legal authority and misstates the allegations in the SAC. Likewise, Shaw mischaracterizes the essential nature of Relators' allegations against Shaw and the other auditors.

Under the first category of claims made actionable by the FCA, set forth at 31 U.S.C. § 3729(a)(1)(A) (formerly § 3729(a)(1)), the relator must allege "'three elements: (1) a 'false or fraudulent' claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with knowledge that the claim was false.'" *United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*, 696 F. Supp. 2d 1190, 1196–97 (D. Idaho 2010) (quoting *United States v.*

9

*Mackby*, 261 F.3d 821, 826 (9th Cir. 2001)). These categories of claims also require relators show materiality. *United States ex rel. Suter v. Nat'l Rehab. Partners Inc.*, No. CV-03-015-S-BLW, 2009 WL 3151099, at *6 (D. Idaho Sept. 24, 2009).[5]

Importantly, however, the defendant 'need not be the one who actually submitted the claim forms in order to be liable.'" *E. Idaho Reg'l Med. Ctr.*, 696 F. Supp. 2d at 1200 (quoting *Mackby*, 261 F.3d at 827). Instead, "[t]he FCA reaches 'any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.'" *Mackby*, 261 F.3d at 827 (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544–45 (1943)); *E. Idaho Reg'l Med. Ctr.*, 696 F. Supp. 2d at 1200 ("So long as the defendant caused the false claim to be presented to the government, the defendant cannot escape liability merely because the defendant did not submit the claim or have 'direct contractual relations with the government.'" (quoting *Mackby*, 261 F.3d at 827 (internal quotation marks omitted)).

"Courts borrow general tort law principles to analyze the FCA's causation element." *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK, 2014

---

[5] FERA added the express reference to materiality for claims under the second category. *Compare* 31 U.S.C. § 3729(a)(2) (2008) *with* 31 U.S.C. § 3729(a)(1)(B) (2010). However, the Ninth Circuit incorporates a materiality element into the first category of claims as well. *Suter*, 2009 WL 3151099, at *6. "To establish materiality," the Ninth Circuit requires only that the false statement be "relevant to the government's decision to confer a benefit." *Ebeid*, 616 F.3d at 997); *accord Hendow*, 461 F.3d at 1173; 31 U.S.C. § 3729(b)(4) ("[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.").

WL 3605896, at *8 (C.D. Cal. July 10, 2014) (citing *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004)). Under these principles, a defendant that did not directly submit claims to the government "may be liable for false claims submitted by others if its conduct was a substantial factor in bringing about the false claims and such claims were a foreseeable and natural consequence of its conduct." *Celgene Corp.*, 2014 WL 3605896, at *8 (citing *Zimmer, Inc.*, 386 F.3d at 244; *United States ex rel. Humane Soc. of U.S. v. Hallmark Meat Packing Co.*, No. EDCV 08-00221-VAP (OPx), 2013 WL 4713557, at *11 (C.D. Cal. Apr. 30, 2013)).

Shaw reads the SAC far too narrowly. In *Corinthian Colleges*, the Ninth Circuit held that the allegation that the auditor "fraudulently caused the United States to pay Title IV, HEA Program funds to [the school] by such false and fraudulent compliance audit and financial statement audit" was sufficient. 655 F.3d at 999. Here, Relators have made similar allegations. (SAC ¶ 400 (Shaw "caused the United States to pay Title IV, HEA program funds to Defendant Schools by such false and fraudulent compliance audit" reports)). And Relators allege more—the SAC also includes allegations that Shaw "made false certifications of compliance . . . while knowing that Defendant Schools would submit such certifications to the [Department] to obtain . . . and to remain eligible to receive Title IV funding," that Shaw "intended for the [Department] to rely on [its] audit opinions and statements," that had Shaw "disclosed Defendant Schools' violations of the Incentive Compensation Ban, the [Department] would have taken action against Defendant Schools," and that Shaw "facilitated Defendant Schools' violation

of the Incentive Compensation Ban" through its actions. (SAC ¶¶ 400–401, 404.)
These allegations are more than sufficient to allege that Shaw's conduct was a
"substantial factor in bringing about the false claims" presented by Defendant
Schools.[6] *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK, 2014
WL 3605896, at *8 (C.D. Cal. July 10, 2014).

Relators have properly pled a violation of 31 U.S.C. § 3729(a)(1)(A) against
Shaw. As illustrated, Shaw need not have direct contractual relations with the
government in order to have caused a false or fraudulent claim to be made. Further,
Shaw is liable for the natural consequences of its conduct. Moreover, Shaw's
conduct was a substantial factor in the submission of fraudulent claims to the
government.

### B.   Shaw Knowingly Made a False Statement Material to a False Claim.

Shaw next argues that Relators' false certification theory fails because Shaw
did not "certify" Defendant Schools' compliance with the requirements of Title IV of
the HEA and because Shaw's audit and attestation reports were not prerequisites to
payment. Shaw again misapplies the relevant law. Shaw's audit and attestation
reports—which did not comply with applicable Department regulations—were
material to false claims submitted to the Department by Defendant Schools.

Under the second category, set forth at 31 U.S.C. § 3729(a)(1)(B) (formerly
§3729(a)(2)), "[t]he essential elements of an FCA claim are (1) a false statement or

---

[6]  Relators' response to Defendant Schools' motion to dismiss, submitted
concurrently herewith, contains a more detailed discussion of the variety of false
claims submitted by the Schools.

fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Corinthian Colls.*, 655 F.3d at 992; *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1171–72 (9th Cir. 2006).

Shaw goes to great pains to establish that its audits did not "provide a legal determination" on the Schools' compliance with various laws and regulations. (Shaw Mem. 8.) Yet again Shaw fundamentally misapprehends the nature of Relators' claims. Relators do not—and need not—allege that Shaw falsely certified Defendant Schools' compliance with any laws, including the Incentive Compensation Ban. Rather, Relators need only allege—and have alleged—that Shaw made a false statement material to a false claim. 31 U.S.C. § 3729(a)(1)(B). Shaw's false statement was not that Defendant Schools' were complying with any particular laws or regulations but that Shaw had assessed the Schools' compliance with specific laws and regulations according to specific audit steps and procedures, when, in fact, Shaw did not do so. (SAC ¶¶ 387–389.) Had Shaw actually performed the audit procedures it certified to the Department it performed, which were designed by the Department to root out fraud like that committed by Defendant Schools, Shaw would have discovered and reported Defendant Schools' violations.

Shaw falls into the trap that the Ninth Circuit warned against: believing "that the word 'certification'" in the false certification context "has some paramount and talismanic significance." *Hendow*, 461 F.3d at 1172. It does not. Instead, "[s]o long as the statement in question is knowingly false when made, it matters not

13

whether it is a certification, assertion, statement, or secret handshake." *Id*. The Ninth Circuit has clarified, "[t]o establish materiality . . . the term 'certification' ha[s] no special significance; rather, 'the question is merely whether the false certification—or assertion, or statement—was relevant to the government's decision to confer a benefit.'" *Ebeid*, 616 F.3d at 997 (quoting *Hendow*, 461 F.3d at 1173).

Shaw further asserts that Shaw's audit and attestation reports were not prerequisites to payment of Defendant Schools' claims.[7] In fact, the applicable regulations condition Defendant Schools' receipt of funding from Title IV programs on Shaw's audit reports. The regulation provides that Defendant Schools "*must* at least annually have an independent auditor conduct a compliance audit of its administration of that program." 34 C.F.R. § 668.23(a)(2) (emphasis added); *Hendow*, 461 F.3d at 1176 (identifying language in 34 C.F.R. § 668.14(a)(1) similarly mandating certain actions by schools as sufficient to establish materiality).

Compliance audits are a condition of a school's continued eligibility to receive Title IV funds. In particular, the relevant statute provides that "[i]n order to be an eligible institution" to receive Title IV funds, a school "*shall* . . . enter into a program participation agreement" that "*shall condition* the initial and *continuing*

---

[7] Shaw's argument—that Shaw's compliance audit reports were "not prerequisites to payment" (Shaw Mem. 3)—has been squarely rejected by the Ninth Circuit. While it is true that an actionable false certification must be relevant to the government's decision to confer the benefit, in *Hendow,* the Ninth Circuit observed that "[i]n the context of Title IV and the Higher Education Act, if we held that conditions of participation were not conditions of payment, there would be no conditions of payment at all." 461 F.3d at 1176. The question is merely one of materiality. *Id*. at 1175-76.

*eligibility* of an institution to participate in a program upon compliance with," inter alia, "the provisions of subsection (c) of this section and the regulations prescribed under that subsection." 20 U.S.C. §§ 1094(a), (a)(4) (emphasis added). Subsection 1094(c), in turn, requires

> a compliance audit of such institution . . . on at least an annual basis . . . conducted by a qualified, independent organization or person in accordance with standards established by the Comptroller General . . . and as prescribed in regulations of the [Department].

In the SAC, Relators specifically allege that even though Shaw told the government it had reviewed Defendant Schools' payroll and disbursement records to determine whether the Schools' were paying bonuses, Shaw failed to do so. (SAC ¶¶ 394, 399.) The SAC identifies many other audit procedures that Shaw certified to the Department it carried out as part of its audit, when, in fact, Shaw did not do so. (SAC ¶¶ 387–95, 399.) Moreover, Relators allege in the SAC that these false statements were material to the Department's decision to maintain Defendant Schools' eligibility to receive Title IV funds. (SAC ¶¶ 400–401, 404.) That is all that is required.[8] *Corinthian Colls.*, 655 F.3d at 999 (holding that the complaint sufficiently alleged claims against the auditor because, by "citing to financial accounting standards," it "provides details as to what practices are being challenged . . . and what practices should have been used in their place").

---

[8] Nevertheless, Relators' proposed Third Amended Complaint includes additional detail about the statements that Shaw made to the DOE (1) concerning Shaw's purported audit procedures (which Shaw did not actually perform) and (2) Shaw's conclusion that, based on its supposed performance of the audit procedures, Defendant Schools were complying with various laws and regulations, including the Incentive Compensation Ban. (TAC ¶¶ 359–78.)

Relators have properly pled a violation of 31 U.S.C. § 3729(a)(1)(B) against Shaw. To be clear, Relators allege that Shaw knew that it had to perform certain audit steps and examine certain information (e.g., payroll records) to determine whether Defendant Schools' were paying incentive compensation (SAC ¶¶ 387–395) and that Shaw either (1) obtained information showing Defendant Schools were paying substantial bonuses to recruiters but failed to disclose it in its audit reports, or (2) failed to even obtain the required information and review it, despite certifying to the government that it had (SAC ¶¶ 396–401, 403). This fraudulent course of conduct was done knowingly, *see* Part II, *supra*, and was material to the government's decision to confer a benefit. Because nothing more is required, Shaw's Motion fails.

## CONCLUSION

For the foregoing reasons, Relators respectfully request the Court deny Shaw's Motion to Dismiss.

DATED this 26th day of November 2014.

/s/ _____
JOHN N. ZARIAN
BRANDON J. MARK
JOSEPH M. STULTZ
ALISSA M. MELLEM
PARSONS BEHLE & LATIMER
*Attorneys for Relators*

16

## CERTIFICATE OF SERVICE

I certify that on November 26th, 2014, I caused the foregoing **RELATORS' OPPOSITION TO SHAW'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO.98) FILED ON 10/27/14,** to be served on the following in the manner specified:

Eric B Swartz
eric@jonesandswartzlaw.com
Mark Paul Coonts
mark@jonesandswartzlaw.com
Gerald Ritzert
gritzert@ritzert-leyton.com
Steven M. Gombos
sgombos@ritzert-leyton.com
*(attorneys for defendants Center for Excellence in Higher Education, Inc., Stevens-Henager College, Inc., CollegeAmerica Denver, Inc., CollegeAmerica Arizona, Inc., California College of San Diego, Inc., and Carl Barney via the Court's CM/ECF system pursuant to LR 5.1(k))*

A. Dean Bennett
adbennett@hollandhart.com
Eric G. Maxfield
egmaxfield@hollandhart.com
*(attorneys for defendants Shaw, Mumford & Co., P.C., and Shaw & Co., P.C. via the Court's CM/ECF system pursuant to LR 5.1(k))*

Antony L. Ryan
aryan@cravath.com
Samira Shah
sshah@cravath.com
Thomas G. Rafferty
trafferty@cravath.com
Richard H. Greener
rgreener@greenerlaw.com
Thomas John Lloyd
tlloyd@greenerlaw.com
*(attorneys for defendant PriceWaterhouseCoopers LLP via the Court's CM/ECF system pursuant to LR 5.1(k))*

Wendy J. Olson, United States Attorney
Amy S. Howe, Assistant United States Attorney
Amy.Howe@USDOJ.gov
Jay D Majors
jay.majors@usdoj.gov
*(via the Court's CM/ECF system pursuant to LR 5.1(k))*

/s/ _____