John N. Zarian, ISB No. 7390
PARSONS BEHLE & LATIMER
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
Email:  jzarian@parsonsbehle.com

*Attorneys for Relators and Plaintiffs
Katie Brooks and Nannette Wride*

Brandon J. Mark (pro hac vice)
Joseph M. Stultz (pro hac vice)
Alissa M. Mellem (pro hac vice)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email:  bmark@parsonsbehle.com
          jstultz@parsonsbehle.com
          amellem@parsonsbehle.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>       Plaintiffs,<br><br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah Corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., a Utah Corporation; COLLEGEAMERICA DENVER, INC., a Colorado Corporation; COLLEGEAMERICA ARIZONA, INC., a Colorado Corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation; CARL BARNEY, an individual; SHAW, MUMFORD & CO., P.C., an expired Utah Professional Corporation; SHAW & CO., P.C., a Utah Professional Corporation; PRICEWATERHOUSECOOPERS LLP, a Delaware Limited Liability Partnership; and DOES 1-500, Inclusive,<br><br>       Defendants. | Case No. 1:13-cv-00009-BLW<br><br>**DECLARATION OF JOSEPH M. STULTZ** |

I, Joseph M. Stultz, declare as follows:

1.      I am over eighteen years of age and have personal knowledge of the facts stated in this declaration. If called upon to do so, I could testify as to the matters set forth herein.

2.      I am an attorney at the law firm of Parsons Behle & Latimer, counsel for relators Katie Brooks and Nannette Wride.

3.      Peggy Breski, a former admissions consultant ("AC"), worked for Stevens-Henager College Inc. ("Stevens-Henager") at its Boise, Idaho and Nampa, Idaho campuses. She currently lives in Boise, Idaho, but no longer works for any of Defendants. We expect her to testify to the following: (1) she received regular bonuses based not only on completions, but also on enrollments and on her interview conversion ratio (interview conversion ratio equals the number of interviews divided by student enrollments or starts); (2) other Stevens-Henager ACs working in Idaho would try and recruit students by leaving flyers or giving presentations at locations like government subsidized day care and government subsidized apartment complexes; (3) another Stevens-Henager AC working in Idaho enrolled 12 homeless people in one month; (4) the Stevens-Henager campus in Boise, Idaho hired a recent Stevens-Henager graduate without any practical experience to teach a computer networking class even though the person teaching that class was required to have had some years of practical experience in the field under accreditation standards; (5) the Stevens-Henager campus in Boise, Idaho hired someone who only had an undergraduate degree from Stevens-Henager to

teach a general education class even though the accreditation standards required that the professor for that class have a master's degree; and (6) Dave Breck, the Director of Admissions for the Boise campus, and Barbara Thomas, the Chief Operating Officer for Stevens-Henager College, told her to take the school's AC Manual offsite so that auditors from the Accrediting Commission of Career Schools and Colleges ("ACCSC") would not look at the manual and ask questions about the contents of the manual, which included details on bonuses for ACs.

4.  Robin Hawkins, a former AC, worked for Stevens-Henager at its Boise, Idaho and Nampa, Idaho campuses. She currently lives in Nampa, Idaho, but no longer works for any of Defendants. We expect her to testify to the following: (1) she received regular bonuses based not only on completions, but also on enrollments and on her interview conversion ratio; (2) certain ACs that worked in Idaho recruited the homeless and it was a common joke that one Idaho AC had recruited students that were living in a van in the Wal-Mart parking lot; (3) certain Idaho ACs targeted some of their recruiting efforts at places frequented by lower income people, like businesses with government subsidized day care and check cashing stores; (4) "The Rock," a prestigious award given out at a training conference for ACs in Las Vegas, Nevada, was based solely on which campus had the highest interview conversion ratio; (5) a certain professor taught classes in Idaho even though he did not have the years of experience in the relevant field required under the accreditation standards; (6) she was instructed by Barbara Thomas not to speak with the ACCSC auditors and was instructed to take her AC Manual home so that

the auditors could not review the manual and ask ACs questions about the manuals; and (7) the Idaho campuses commonly hired recent graduates to act as tutors for other students for approximately six months to improve the school's graduate employment statistics, and then fired these students after they could no longer help the statistics.

5. Jeff White, a former AC, Assistant Director of Admissions, and a Director of Admissions, worked for Stevens-Henager at its Boise, Idaho and Nampa, Idaho campuses. He currently lives in Boise, Idaho, but no longer works for any of Defendants. We expect to call him as a witness for our case because he can testify to the following: (1) he received regular bonuses based not only on completions, but also on enrollments and on his interview conversion ratio; (2) he was denied bonuses that he should have received for student "completions" because he did not meet his start and interview conversion ratio targets; (3) the fact that he missed these bonuses and had "$0" put on his completion certificates used for bonuses motivated him to get his starts and interview conversion ratio up to the target; (4) he knew that he had to have outstanding performance in starts and in his interview conversion ratio to be able to go to an all-expenses "elite" sales training in San Diego, California and was motivated by this bonus to do better on his start related goals; (5) certain ACs that worked in Idaho recruited the homeless; (6) certain Idaho ACs targeted some of their recruiting efforts at places frequented by lower income people, like government subsidized daycare for single mothers; and (7) "The Rock," a

4

prestigious award given out at a training conference for ACs in Las Vegas, Nevada, was based solely on which campus had the highest interview conversion ratio.

6. Amanda Stolworthy, a former AC, worked for Stevens-Henager at its Boise, Idaho and Nampa, Idaho campuses. She no longer works for any of Defendants. We expect her to testify to the following: (1) she received regular bonuses based not only on completions, but also on enrollments and on her interview conversion ratio; (2) she was told by her supervisors to enroll everyone and anyone regardless of whether they were suitable for college; (3) certain ACs that worked in Idaho recruited the homeless; and (4) the bonus structure that awarded ACs based on enrollments and the interview conversion ratio was rolled out at a training conference in Las Vegas attended by ACs from all of the Defendant Schools.

7. We expect the following Idaho Falls-based ACs will provide relevant testimony to support Relators' claims. Each was employed at CollegeAmerica's[1] Idaho Falls, Idaho campus in 2010 and received bonuses. Christopher Dixon, Joseph Farnes, Angela Hays, Karen Ledbetter, Keya Torres, and Felicia Wright were all ACs at this campus at that time, and we expect that they will testify that they received bonuses based not only on completions, but also on enrollment statistics such as the interview conversion ratio. Angela Hayes lives in Idaho Falls, Idaho and is no longer employed by College America.

---

[1] CollegeAmerica Denver, Inc., a Colorado Corporation, and CollegeAmerica Arizona, Inc., a Colorado Corporation are referred to in aggregate within this declaration as "CollegeAmerica."

8. We expect the following Idaho Falls-based financial planner will provide relevant testimony to support Relators' claims. She was employed at CollegeAmerica's Idaho Falls, Idaho campus in 2010 and received bonuses. Katie Anderson was a financial planner at this campus at that time, and we expect that she will testify that she received bonuses for obtaining financial aid for enrollees.

9. We expect the following additional Boise-based ACs will provide relevant testimony to support Relators' claims. They were all employed at Stevens-Henager's Boise, Idaho campus in 2010 and received bonuses. Michele Wilson, Rockford Ruddy, Robert Pugmire, Tiffany Donoho, and Anthony Bridgeforth were all ACs at this campus at that time, and we expect that they will testify that they received bonuses based not only on completions, but also on enrollment statistics such as the interview conversion ratio. Anthony Bridgeforth lives in Boise, Idaho and is no longer employed by Stevens-Henager. Michele Wilson is no longer employed by Stevens-Henager.

10. We expect the following Boise-based financial planners will provide relevant testimony to support Relators' claims. They were employed at Stevens-Henager's Boise, Idaho campus in 2010 and received bonuses. Steven Wargo, Christine Moore, Joanne Kurz, Alan Hedquist, Connie Hancock, Odet Chavez-Saldivar were financial planners at this campus at that time, and we expect that they will testify that they received bonuses for obtaining financial aid for enrollees. Steven Wargo lives in Idaho Falls, Idaho and is no longer employed by Stevens-Henager. Joanne Kurz is no longer employed by Stevens-Henager.

11.     We expect the following Boise-based director of admissions will provide relevant testimony to support Relators' claims. He was employed at Stevens-Henager's Boise, Idaho campus in 2010. David Breck was Director of Admissions at that time, and we believe he will testify that: (1) the ACs that worked under him received bonuses based not only on completions but also on measures of enrollment such as the interview conversion ratio; (2) that he himself received bonuses based on enrollment; and (3) that he would put "$0" on the completion certificates used to award bonuses if the AC did not hit certain start related goals, such as starts in a month and the interview conversion ratio. David Breck is no longer employed by Stevens-Henager.

12.     We expect the following Boise-based campus directors will provide relevant testimony to support Relators' claims. They were employed at Stevens-Henager's Boise, Idaho, campus in 2010. Shane Reeder was Campus Director and Danielle Horras was Associate Campus Director, and we expect that they will testify that they received impermissible bonuses based on campus-wide enrollment statistics such as upgrades, retention, and interview conversion ratio. Danielle Horras lives in Boise, Idaho and is no longer employed by Stevens-Henager.

13.     We expect the following Nampa-based ACs will provide relevant testimony to support Relators' claims. They were all employed at Stevens-Henager's Nampa, Idaho campus in 2010 and received bonuses. Corinne Mills and Shawn Rux were ACs at this campus at that time, and we expect that they will testify that they

7

received bonuses based not only on completions, but also on enrollment statistics such as the interview conversion ratio.

14. We expect the following Nampa-based financial planners will provide relevant testimony to support Relators' claims. They were employed at Stevens-Henager's Nampa, Idaho campus in 2010 and received bonuses. Sandra Funkhouser and Debra Mardis were financial planners at this campus at that time and we believe that they will testify that they received bonuses for obtaining financial aid for enrollees.

15. We expect the following Nampa-based director of admissions will provide relevant testimony to support Relators' claims. He was employed at Stevens-Henager's Nampa, Idaho, campus in 2010. George Thomas was an Associate Director of Admission at this time, and we expect that he will testify that he received impermissible bonuses based on campus-wide enrollment statistics such as upgrades, retention, and interview conversion ratio.

16. Craig Hinson, a former AC, worked for California College San Diego in San Diego, California. He lives in San Diego, California, and no longer works for any of Defendants. We expect him to testify to the following: (1) he received regular bonuses based not only on completions, but also on enrollments and on her interview conversion ratio; (2) he was told to say that his bonuses were paid based on retentions and not enrollments if asked; (3) he was told by Barbara Thomas to return the Procedure Directive explaining how bonuses were impacted by the interview conversion ratio right before accreditors audited the campus; (4) his

supervisors communicated to all ACs to enroll everyone regardless of problems and that the only enrollment criteria was that an individual had a high school diploma or GED and speak English.

17.     Debbi Potts, a former campus director, worked for College America at the Cheyenne, Wyoming campus. She lives in Colorado and no longer works for any of Defendants. We expect to call her as a witness for our case because she can testify to the following: (1) that campus directors were paid bonuses on a quarterly basis and that these bonuses could be based on the following enrollment-related categories: the interview conversion ratio, retention, and upgrades; (2) that she was instructed by Barbara Thomas to hide the school's textbook loan room from ACCSC auditors because Barbara Thomas said that the textbook loan room might cause the accrediting body to raise questions about Defendant Schools' compliance with the 90-10 Rule; and (3) ACs on her campus received bonuses based not only on completions, but also on enrollments and on their interview conversion ratio.

18.     Defendants have filed a number of lawsuits in this forum previously. For example, earlier this year, on January 3, 2014, Defendant Center for Excellence in Higher Education ("CEHE") and Stevens-Henager filed a lawsuit against Anika Phillips and Darrick Tanaka in the District Court for the Fourth Judicial District for the County of Ada, Idaho. The same lawyers representing Defendants in this lawsuit also represent CEHE and Stevens-Henager in that lawsuit.

19. On March 1, 2012, Stevens-Henager filed a lawsuit against Nichole Poedy in the District Court for the Fourth Judicial District for the County of Ada, Idaho.

20. On January 12, 2012, Stevens-Henager filed a lawsuit against Jaimie Love in the District Court for the Fourth Judicial District for the County of Ada, Idaho.

21. On June 5, 2007, Stevens-Henager was named as a defendant in a lawsuit brought by JP Development, Inc., which was also filed in the Fourth Judicial District for the County of Ada, Idaho.

22. Defendants also initiated numerous lawsuits outside of Utah and have been named as parties in many lawsuits outside of Utah. For example,

    a. The Attorney General of Oregon filed a lawsuit in Multnomah County, Oregon, against CollegeAmerica and Barney in 1995 alleging consumer fraud claims;

    b. CollegeAmerica initiated a lawsuit in Coconino County, Arizona, in February 2010 against the Hopi Tribe Economic Development Corporation and others;

    c. CollegeAmerica initiated a lawsuit in Coconino County, Arizona, in December 2008 against Primary Systems Services Group, LLC;

    d. CEHE, Stevens-Henager, and Eric Juhlin, among others, were named as defendants in a lawsuit filed in the United States District Court for Arizona by an individual (Michael Holowecki) in June 2014;

  e. CollegeAmerica and Barney were named as defendants in a class action lawsuit filed in the United States District Court for Arizona by an individual (Jessie Gonzalez) in January 2013;

  f. CollegeAmerica was named as defendant in a lawsuit filed in the United States District Court for Arizona by an individual (Edwin Parker) in May 2007;

  g. CEHE and CollegeAmerica filed a lawsuit against a trustee in El Paso County, Colorado, in January 2014;

  h. CollegeAmerica and CEHE were named as defendants in a case filed in the United States District Court for Colorado by the United States Equal Employment Opportunity Commission in April 2014;

  i. Three individuals (Love King, Kristie Matlock, and Lea Vigil) filed an arbitration complaint against CollegeAmerica in Colorado in 2014;

  j. California College of San Diego was named as a defendant in a case filed in the United States District Court for the Southern District of California by an individual (Shannon Barbour-Zimmerman) in November 2010; and

  k. California College of San Diego was named as a defendant in a case filed in the Superior Court of San Diego County by an individual (Jose San Martin) in May 2005;

  l. Barney was named as a defendant in a lawsuit filed in Washoe County, Nevada, by Mt. Rose Heating and Air Conditioning in approximately 2004;

      m.    CollegeAmerica and Barney were named as defendants in a lawsuit filed in Washoe County, Nevada, by U.S. Bank National Association in 2009.

23.    Defendant Schools prosecute litigation without regard to costs and without regard to the amount at stake in the case. For example, Defendant CollegeAmerica Denver, Inc., and CEHE filed a lawsuit against Debbi Potts, their former Cheyenne, Wyoming, Campus Director, in Larimer County Court, Colorado (No. F13C31608; Division 4D) in March 2013 seeking the total sum of $7,000.00. CollegeAmerica and CEHE engaged one the premier law firms in Colorado to prosecute the action. Even though actions in Colorado county courts are supposed to use simplified discovery procedures, CollegeAmerica and CEHE's lawyers sought extensive discovery. Moreover, CollegeAmerica and CEHE's lawyers filed multiple motions in the case. Based on the amount of work performed by CollegeAmerica and CEHE's lawyers in the case, which is substantial, it is reasonably certain that CollegeAmerica and CEHE have spent many times the amount of money at stake in the case on their own legal fees.

24.    Defendant CollegeAmerica has also paid a lawyer to file unsuccessful appeals from adverse arbitration awards in Colorado, even though the applicable standard of review "is among the narrowest known to law." *Barnett v. CollegeAmerica*, No. 13CA1668 (Colorado Court of Appeals, Aug. 21, 2014), attached hereto as Exhibit A; *see also* CollegeAmerica's Petition For Writ of

12

Certiorari to Colorado Supreme Court, *Barnett v. CollegeAmerica*, attached hereto as Exhibit B.

25. Defendants' CEO, Eric Juhlin, travels outside of Utah on behalf of Defendants on a regular basis, including for litigation purposes. For example, Eric Juhlin attended the official meetings of the Board of the Colorado Department of Private Occupational Schools, held in Denver, Colorado, on January 24, 2012, December 4, 2012 January 22, 2013, February 26, 2013, April, 23, 2013, and September 23, 2014.

26. Additionally, until the trial was stayed because the United States Equal Employment Opportunity Commission filed a lawsuit alleging, among other things, that CollegeAmerica's suit against Ms. Potts was brought in retaliation for her submitting complaints to the agency, Mr. Juhlin was scheduled to testify at the trial in CollegeAmerica's suit against Ms. Potts in Larimer County, Colorado, in early May 2014.

27. Barbara Thomas, Defendants' Chief Operations Officer, frequently traveled to all of Defendant Schools' many locations, including, but not limited to, Idaho and Wyoming. (Second Amended Complaint ("SAC") ¶¶ 293, 353.)

28. Defendant Schools' employees regularly travel for work. Periodically, the top performing ACs (and their directors) from the various campuses of Defendant Schools are provided an all-expenses-paid vacation to San Diego for "elite" training. (SAC ¶ 211.) In addition, several times a year, all ACs, Financial Aid Officers ("FAOs"), and directors of admission who work for Defendant Schools

gather at a convention in Las Vegas, Nevada, to discuss tactics to boost enrollment, among other topics. (SAC ¶ 206.)

29. Defendant Schools' Chief Operating Officer, Barbara Thomas, issued a Corrective Action Plan from her office in San Diego, California in response to adverse findings from the PricewaterhouseCoopers LLP ("PwC") 2009 financial audit. *See* Ex. A to PwC's Motion, ECF No. 97-3 at 20.

30. PwC issued its financial audits of the Defendant Schools from San Diego, California. *See* Ex. A to PwC's Motion, ECF No. 97-3 at 4; Ex. B to PwC's Motion, ECF No. 97-4 at 4.

31. Based on end-of-year 2010 payroll records, Defendant Schools had 168 employees at the Boise campus, 10 employees at the Nampa campus, and 19 employees at the Idaho Falls campus, for a total of 197 employees in Idaho at that time.

32. Sometime around 2008, Defendants Schools migrated their payroll from a company called "Paychex" to a company called "Ultimate Software" and a software called "UltiPro." This company is located in Florida, as is evidenced by the letters in Exhibit C, attached hereto.

33. Until December 31, 2012, CollegeAmerica Services, Inc., provided advertising services, legal services, human resources, insurance, tax, default management planning, executive training, accreditation services, consulting, planning, accounting, marketing, financial aid services, "and a bunch of other services" to all Defendant Schools. It was incorporated in Nevada with its corporate

headquarters in Carl Barney's office in Crystal Bay, Nevada. *See* April 6, 2006 Deposition of Carl Barney at 12:20-14:7, *CollegeAmerica Services, Inc. v. Craft & Associates, Inc.* (D.S.D.) Case 4:03-cv-04247-LLP, Document 71-2, Filed 05/09/06, attached as Exhibit D; March 19, 2010 Deposition of Carl Barney at 16:20-17:14, *U.S. Bank Nat'l Assoc. v. CollegeAmerica Services*, Case No. CV09-00651, Second Judicial Dst. Ct., Nevada, Washoe Cty., attached as Exhibit E; s*ee also* Eric Juhlin Decl., ECF No. 100, Oct. 27, 2014 at ¶ 12 ("CollegeAmerica Services, Inc. ("CASI") was a company formed to provide administrative services to the Colleges. It was located in Crystal Bay, Nevada. A written service agreement was signed December 1, 2010, after negotiation in Crystal Bay and Salt Lake City, Utah. The document was fully executed and made effective in Crystal Bay, Nevada. The agreement memorialized services CASI had been providing to the other college corporations since 2002. Such services included, among other things, legal services (which were provided by Matthew Gerber from Seattle, Washington) and accounting services (which were provided by Esmond & Associates in Calabasas, California).").

34.     Remote electronic methods can be used to conduct discovery and permit witnesses to testify at trial in a cost-effective manner

35.     Defendant Schools are familiar with the use of remote electronic methods—in fact, they filed a motion in a state court case to allow witness to testify at trial remotely.

36.     Stevens-Henager and CollegeAmerica received far more Title IV funds than California College San Diego, Inc. during the relevant period.  For example, for

the 2008-2009 award year (ending June 30, 2009), CollegeAmerica took in $33.6 million, Stevens-Henager took in $51.2 million, and California College San Diego, Inc. took in $15.3 million, or 15.3% of the total.[2]

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of November, 2014, at Salt Lake City, Utah.

_____
Joseph M. Stultz

---

[2] Data publicly available at https://studentaid.ed.gov/about/data-center/student/title-iv (last visited November 24, 2014). Totals are for all loan volume disbursements, grant volume disbursements, and campus-based volume disbursements.

## CERTIFICATE OF SERVICE

I certify that on November 26, 2014, I caused the foregoing **DECLARATION OF JOSEPH M. STULTZ** to be served on the following in the manner specified:

Eric B Swartz
eric@jonesandswartzlaw.com
Mark Paul Coonts
mark@jonesandswartzlaw.com
Gerald Ritzert
gritzert@ritzert-leyton.com
Steven M. Gombos
sgombos@ritzert-leyton.com
*(attorneys for defendants Center for Excellence in Higher Education, Inc., Stevens-Henager College, Inc., CollegeAmerica Denver, Inc., CollegeAmerica Arizona, Inc., California College of San Diego, Inc., and Carl Barney via the Court's CM/ECF system pursuant to LR 5.1(k))*

A. Dean Bennett
adbennett@hollandhart.com
Eric G. Maxfield
egmaxfield@hollandhart.com
*(attorneys for defendants Shaw, Mumford & Co., P.C., and Shaw & Co., P.C. via the Court's CM/ECF system pursuant to LR 5.1(k))*

Antony L. Ryan
aryan@cravath.com
Samira Shah
sshah@cravath.com
Thomas G. Rafferty
trafferty@cravath.com
Richard H. Greener
rgreener@greenerlaw.com
Thomas John Lloyd
tlloyd@greenerlaw.com
*(attorneys for defendant PricewaterhouseCoopers LLP via the Court's CM/ECF system pursuant to LR 5.1(k))*

Wendy J. Olson, United States Attorney
Amy S. Howe, Assistant United States Attorney
Amy.Howe@usdoj.gov
Jay D Majors
Jay.Majors@usdoj.gov
*(via the Court's CM/ECF system pursuant to LR 5.1(k))*

/s/ Brandon J. Mark