# Exhibit A

13CA1668 Barnett v. CollegeAmerica 08-21-2014

COLORADO COURT OF APPEALS

DATE FILED: August 21, 2014
CASE NUMBER: 2013CA1668

---

Court of Appeals No. 13CA1668
El Paso County District Court No. 12CV2514
Honorable Jann P. DuBois, Judge

---

Laura Barnett,

Plaintiff-Appellee,

v.

CollegeAmerica Colorado Springs, Inc., a Colorado corporation; Rozann Kunstle, individually; Jill Roudebush, individually; Kelley Fazzone, individually; Tami Rowe, individually; Tammy Allen, individually,

Defendants-Appellants.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE FURMAN
Terry and Lichtenstein, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(f)**
Announced August 21, 2014

---

Torbet & Tuft, LLC, David G. McConkie, Colorado Springs, Colorado, for Plaintiff-Appellee

Husch Blackwell LLP, Lawrence M. Zavadil, Denver, Colorado for Defendants-Appellants

Defendants, CollegeAmerica Colorado Springs, Inc., Rozann Kunstle, Jill Roudebush, Kelley Fazzone, Tami Rowe, and Tammy Allen (collectively, CollegeAmerica), appeal the district court's order confirming a binding arbitration award in favor of plaintiff, Laura Barnett, in the amount of $30,276.00. CollegeAmerica contends that the district court erred in confirming the award because the arbitrator manifestly disregarded Colorado law by (1) finding that CollegeAmerica was liable for negligent misrepresentation and (2) awarding damages based on speculation or conjecture. Because we disagree with CollegeAmerica's contentions, we affirm the district court's order.

## I. Barnett's Enrollment

In 2008, Barnett saw television commercials that advertised degrees from CollegeAmerica's Medical Specialties Program, which included a specialty in the field of limited scope x-ray technician.

Barnett visited CollegeAmerica's campus and had a discussion with an enrollment counselor who informed her that she would be able to sit for certification as a limited scope x-ray technician in approximately twenty months, after she completed the block of classes for the limited scope x-ray technician specialty. Barnett

understood that an externship was required to complete the requirements for the degree program.

CollegeAmerica's 2008 informational brochure stated "(not licensure)" after the specialty of "Massage Therapy" but did not state this after the specialty of "Limited Scope X-ray."

Barnett subsequently enrolled in CollegeAmerica's Medical Specialties Program and signed an enrollment agreement which states, in pertinent part:

> **Certifications and Licenses**: The college's educational programs lead to knowledge and skills for a stated major. **We do not guarantee that our educational programs will necessarily be sufficient to obtain any certification or license issued by a public or private agency. Certifications and licenses may require additional study and cost. A third party may administer the examination and further study and a fee will be required.**

Barnett also signed a disclosure that states, "any impression or understanding obtained from advertisements should be evaluated with all facts available to you as presented in this document and the Enrollment Agreement" and "[a]ny oral or written statements inconsistent with" the enrollment agreement "are null, invalid and void."

The disclosures and conditions of enrollment states, "**[t]his is a legal document and it will affect your rights. Read it carefully before signing it.**" They also provide:

> You shall have 30 calendar days from the first day of classes (with an additional 30 calendar days upon request) to re-read the disclosures and conditions of enrollment, the enrollment agreement, the catalog, and all other documents provided to verify any statement or inducement upon which you have relied to enroll in the college (the "Verification Period"). We encourage this re-reading, questioning, and investigation. If, during this Verification Period, you discover any misinformation or misrepresentation on which you relied to enroll, you may terminate your enrollment agreement without any liability and obtain a full refund of monies paid.

Barnett affirmatively stated that she understood "that [she] will be bound by this Agreement, the Disclosures and Conditions of Enrollment, and that these are the complete and full agreement and that no oral promises or inducements have been made to me."

The enrollment agreement asked Barnett whether "any oral statement ha[d] been made which is inconsistent or contradicts these disclosures and conditions of enrollment." If any such statement had been made to Barnett, the enrollment agreement

directed her to "write it below; if none, write 'none.'" Barnett wrote, "[n]one."

But, the enrollment agreement also provides, in pertinent part:

> The parties agree that any dispute arising from enrollment, no matter how pleaded or styled, shall be resolved by binding arbitration under the substantive and procedural requirements of the Federal Arbitration Act . . . . All determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the Arbitrator, and not by a court. The award rendered by the Arbitrator may be entered in any court having jurisdiction.
>
> I. Terms of Arbitration
>
> 1. Both the Student and the College irrevocably agree that any dispute between them shall be submitted to Arbitration.
>
> . . .
>
> 4. The Arbitrator's decision shall be set forth in writing and shall set forth the essential findings and conclusions upon which the decision is based.
>
> 5. Any remedy available from a court under the law shall be available in the arbitration . . . .
>
> III. Acknowledgment and Waiver of Jury Trial
>
> BY SIGNING BELOW, EACH PARTY UNDERSTANDS THE NATURE OF

> ARBITRATION: THAT ARBITRATION IS FINAL AND BINDING, AND EACH PARTY IS WAIVING CERTAIN RIGHTS, INCLUDING, BUT NOT LIMITED TO, ITS RIGHT TO LITIGATE ITS DISPUTE IN COURT, INCLUDING ITS RIGHT TO A JURY TRIAL. Both parties understand that the award of the Arbitrator will be binding, and not merely advisory.

In 2009, Barnett finished her coursework at CollegeAmerica and graduated with a degree from the Medical Specialties Program.

But, Barnett soon came to realize that CollegeAmerica's Medical Specialties Program did not provide her with the number of hours required by Colorado law to sit for certification as a limited scope x-ray technician.

Barnett eventually filed suit against CollegeAmerica in the district court, asserting the following claims: (1) negligent misrepresentation; (2) negligent nondisclosure or concealment; (3) negligence — failure to properly supervise the actions or omission of a subordinate; (4) fraud; and (5) violation of the Colorado Consumer Protection Act. CollegeAmerica then filed a motion to compel arbitration, which the district court granted.

After holding a hearing on Barnett's five claims, the arbitrator issued a written award, finding in favor of Barnett only on her first

claim of negligent misrepresentation and awarding her damages accordingly.

Barnett then filed a motion with the district court for an order confirming the arbitration award. CollegeAmerica filed a response opposing this motion, arguing that the arbitrator "manifestly disregarded" Colorado law.

The district court granted Barnett's motion and confirmed the arbitration award in a written order. In so doing, the court referenced the binding arbitration agreement between the parties and deferred to the arbitrator's finding that Barnett "reasonably relied on [CollegeAmerica's false statements] when she enrolled and pursued her education at CollegeAmerica." In response to CollegeAmerica's claim that the arbitrator's damages award was based on "pure speculation and conjecture," the court also deferred to the arbitrator's finding that Barnett's expert "was not persuasively refuted by any evidence presented by [CollegeAmerica]" and confirmed the damages award in the amount of $30,275.00.

## II. Manifest Disregard

In considering CollegeAmerica's appeal, we first note that, as part of Barnett's enrollment agreement, the parties agreed that this arbitration is governed by "the substantive and procedural

requirements of the Federal Arbitration Act." *See S. Wash. Assocs. v. Flanagan*, 859 P.2d 217, 220 (Colo. App. 1992) (parties have freedom to structure both boundaries of arbitration award and procedures under which the arbitrator will arrive at a decision). We also note that "[a]n arbitrator's manifest disregard of the law is a federal common law ground for vacating an arbitration award under the Federal Arbitration Act . . . ." *Coors Brewing Co. v. Cabo*, 114 P.3d 60, 61 (Colo. App. 2004).

CollegeAmerica urges us to adopt the "manifest disregard" of the law standard from the Fourth Circuit Court of Appeals. *See Dewan v. Walia*, 544 F. App'x 240 (4th Cir. 2013). That court has stated that "manifest disregard" is established "where the 'arbitrator[] understand[s] and correctly state[s] the law, but proceed[s] to disregard the same.'" *Id.* at 246 (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006)).

But, our review of the arbitration award under the Federal Arbitration Act is "'substantially circumscribed'"; in fact, it is among the narrowest known to law. *Id.* at 245 (quoting *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007)). Thus, in order to vacate an arbitration award, the party that opposes the award bears the "heavy burden" of showing that the

arbitrator manifestly disregarded the law. *Dewan*, 544 F. App'x at 245.

A. Negligent Misrepresentation

CollegeAmerica contends that the arbitrator manifestly disregarded Colorado law in finding that it was liable for negligent misrepresentation because of the binding nature of Barnett's signature on the enrollment agreement, which stated that (1) she understood "certifications and licenses may require additional study and cost" and (2) "no oral promises or inducements ha[d] been made to [her]." We disagree with this contention.

To prevail on a claim for negligent misrepresentation, the plaintiff must prove that (1) the defendant supplied false information in a business transaction, (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating that information, and (3) the plaintiff justifiably relied on the false information. *See Platt v. Aspenwood Condo. Ass'n, Inc.*, 214 P.3d 1060, 1067 (Colo. App. 2009). And, "[a] contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on

such negligent misrepresentations." *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991).

In the arbitration award, the arbitrator found that CollegeAmerica was liable for negligent misrepresentation as follows:

> This Arbitrator is then left with Barnett's claim of negligent misrepresentation. As to this claim, I now conclude that [CollegeAmerica's] representations contained in the 2008 informational brochure were false and that [Barnett] reasonably relied on these statements when she enrolled and pursued her education at [CollegeAmerica].

The district court found:

> [The arbitrator] correctly applied Colorado law when she found the following: 1) [CollegeAmerica's] 2008 Informational Brochure concerning the Medical Specialties Program specifically states "not licensure" after Massage Therapy but does not so indicate after Limited Scope X-Ray and a person reading this course description alone may not have an accurate and complete understanding of what is and is not part of the program; 2) [CollegeAmerica's] Medical Specialties Program provides a student with 80 hours of didactic course work in the area of radiology but does not provide a student with the number of requisite hours by state law to permit a graduate of that program to sit for certification as a Limited Scope X-Ray Technician; 3) [Barnett] executed the Enrollment Agreement and initialed certain paragraphs. The first

> paragraph specified that "no oral promises or inducements have been made to me", and another paragraph stated "I understand certifications and licenses may require additional study and cost"; 4) Other students were dissatisfied with the written description of the Medical Specialties Program offerings contained in the 2008 Course Catalogue; and 5) [CollegeAmerica's] representations contained in the 2008 Informational Brochure were false and [Barnett] reasonably relied on these statements when she enrolled and pursued her education there.

Thus, even assuming, without deciding, that the "manifest disregard" standard from the Fourth Circuit Court of Appeals were to apply in this case, we conclude that the arbitrator did not manifestly disregard Colorado law when she found CollegeAmerica liable for negligent misrepresentation. *See Dewan*, 544 F. App'x at 246. Instead, the arbitrator followed Colorado law regarding negligent misrepresentation when she found that CollegeAmerica negligently communicated false information to Barnett through the informational brochure and that Barnett reasonably relied on this false information in enrolling in the Medical Specialties Program. *See Platt*, 214 P.3d at 1067. There is nothing in the arbitration award to suggest that the arbitrator first correctly stated Colorado

law on negligent misrepresentation and then disregarded this law. *See Dewan*, 544 F. App'x at 246.

Although Barnett signed the enrollment agreement saying that she understood that certifications "may require additional study and cost," this does not change the facts found by the arbitrator that CollegeAmerica made specific statements in its brochure that were "false and that [Barnett] reasonably relied on these statements when she enrolled and pursued her education at [CollegeAmerica]." And, while the enrollment agreement represented that "no oral promises or inducements" were made to Barnett and that certifications "may" require additional cost and study, this does not affect the arbitrator's finding of negligent misrepresentation because this finding was based on false information, concerning the Medical Studies Program specifically, in the written informational brochure.

B. Damages

CollegeAmerica also contends that the arbitrator manifestly disregarded Colorado law on damages for negligent misrepresentation because "the insufficient evidence left the Arbitrator with only rank speculation as the basis for her damages award." Again, we disagree.

"[D]amages for negligent misrepresentation may include the difference between the value of what the claimant has received in the transaction and its purchase price or other value given for it, plus other pecuniary loss suffered as a result of claimant's reliance upon the representation." *W. Cities Broad., Inc. v. Schueller*, 830 P.2d 1074, 1078 (Colo. App. 1991), *aff'd*, 849 P.2d 44 (Colo. 1993). Other pecuniary losses suffered as a result of a misrepresentation may be recoverable, but only to the extent that the damages can be calculated with a reasonable certainty. *See W. Cities*, 849 P.2d at 49-50.

The arbitrator found damages for lost wages as follows:

> . . . Barnett presented evidence at the hearing of estimated salary ranges of $3,501 to $5,063 per month with specific graduation and education credentials including graduation from an accredited program for x-ray technicians. The report of Bruce Magnuson, her retained expert in this regard, was not persuasively refuted by any evidence presented by the defense.
>
> . . .
>
> . . . This Arbitrator concludes that the evidence, as a whole, supports a finding of los[t] wages as a limited scope x-ray technician in the amount of $42,012, calculated at the rate of $3,501 per month for a period of One (1) year.

The district court found as follows:

> With regard to the issue of damages, [the arbitrator] concluded that the evidence supported a finding of los[t] wages as a limited scope x-ray tech[nician] in the amount of $42,012, calculated at the rate of $3,501.00 per month for a period of one (1) year. . . . [The arbitrator] based this damage award on the evidence [Barnett] presented regarding "estimated salary ranges of $3,501.00 to $5,063.00 per month with specific graduation and education credentials including graduation from an accredited program for x-ray technicians." . . . [The arbitrator] further found that the report of [Barnett's] expert, Bruce Magnuson, "was not persuasively refuted by any evidence presented by the defense." . . . Contrary to [CollegeAmerica's] assertions, the damage award of the Arbitrator was not based upon speculation and conjecture. The Court finds that there was a reasonable basis for the Arbitrator's computation of damages.

We thus conclude that the arbitrator's award is not based on "pure speculation and conjecture." Instead, the arbitrator made a factual finding based on the evidence produced during the arbitration. We also conclude that there is nothing in the arbitration award to suggest that, with regard to damages, the arbitrator manifestly disregarded Colorado law by first correctly

stating the law and then disregarding it. *See Dewan*, 544 F. App'x at 246.

## III. Attorney Fees and Costs

Barnett requests an award of attorney fees and costs, pursuant to section 13-17-102(2), C.R.S. 2013, and C.A.R. 38, 39, and 39.5, because CollegeAmerica's appeal lacks substantial justification. *See Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006). We deny Barnett's request because CollegeAmerica's briefs set forth, in a manner consistent with C.A.R. 28, a coherent assertion of error supported by legal authority. *See id.*

## IV. Conclusion

The order is affirmed.

JUDGE TERRY and JUDGE LICHTENSTEIN concur.

# Court of Appeals

STATE OF COLORADO
2 East 14th Avenue
Denver, CO 80203
(720) 625-5150

CHRIS RYAN
CLERK OF THE COURT

PAULINE BROCK
CHIEF DEPUTY CLERK

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment. In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment. Pursuant to C.A.R. 3.4(I), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition. Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b) will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT: Alan M. Loeb
Chief Judge

DATED: October 10, 2013

***Notice to self-represented parties***: *The Colorado Bar Association provides free volunteer attorneys in a small number of appellate cases. If you are representing yourself and meet the CBA low income qualifications, you may apply to the CBA to see if your case may be chosen for a free lawyer. Self-represented parties who are interested should visit the Appellate Pro Bono Program page at http://www.cobar.org/index.cfm/ID/21607.*