John N. Zarian, ISB No. 7390
PARSONS BEHLE & LATIMER
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone: (208) 562-4900
Facsimile: (208) 562-4901
Email: jzarian@parsonsbehle.com

*Attorneys for Relators and Plaintiffs Katie Brooks and Nannette Wride*

Brandon J. Mark (pro hac vice)
Joseph M. Stultz (pro hac vice)
Alissa M. Mellem (pro hac vice)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
Email: bmark@parsonsbehle.com
　　　　 jstultz@parsonsbehle.com
　　　　 amellem@parsonsbehle.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah Corporation; CALIFORNIA COLLEGE SAN DIEGO, INC., a Utah Corporation; COLLEGEAMERICA DENVER, INC., a Colorado Corporation; COLLEGEAMERICA ARIZONA, INC., a Colorado Corporation; CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., an Indiana Corporation; CARL BARNEY, an individual; SHAW, MUMFORD & CO., P.C., an expired Utah Professional Corporation; SHAW & CO., P.C., a Utah Professional Corporation; PRICEWATERHOUSECOOPERS LLP, a Delaware Limited Liability Partnership; and DOES 1-500, Inclusive,<br><br>　　　　Defendants. | Case No. 1:13-cv-00009-BLW<br><br>**RELATORS' RESPONSE IN OPPOSITION TO DEFENDANT SCHOOLS' REQUEST FOR JUDICIAL NOTICE (ECF NOS.134, 135)** |

Plaintiffs and Relators Katie Brooks and Nannette Wride ("Relators") respectfully submit this Response in Opposition to Stevens-Henager College, Inc., California College of San Diego, Inc., CollegeAmerica Denver, Inc., CollegeAmerica Arizona, Inc., and Center for Excellence in Higher Education, Inc.'s (the "Defendant Schools") Motion to Take Judicial Notice (ECF Nos.134, 135).

## INTRODUCTION AND BACKGROUND

By their Motion to Take Judicial Notice, Defendant Schools seek to include irrelevant and disputed materials at the reply stage of their motion to dismiss. Specifically, Defendant Schools request judicial notice of four items: (1) a United States Government Accountability Office ("GAO") Report entitled "Higher Education: Information on Incentive Compensation Violations Substantiated by the U.S. Department of Education," February 23, 2010, Rev. March 12, 2010, No. GAO-370R (the "February 2010 GAO Report"); (2) a GAO Report entitled "Stronger Federal Oversight Needed to Enforce Ban on Incentive Payments to School Recruiters," October 2010, No. GAO-11-10 (the "October 2010 GAO Report"); (3) Federal Student Loan Certification Form, OMB No. 1845-0006 ("Form 1845"); and (4) parts of the Federal Student Aid Blue Book (Volume 3, Chapter 4; Appendix B) ("select portions of the Blue Book").

The Court should deny Defendant Schools' request for judicial notice for at least four reasons. First, on a motion to dismiss, it is inappropriate for the Court to consider any materials that are not contained in the complaint at issue. Second, a Court may not take judicial notice of contested interpretations and inferences from such extraneous documents. Third, introducing new arguments at the reply stage of

Defendant Schools' motion to dismiss, when Relators have no opportunity to respond, is procedurally improper. Finally, because these documents are irrelevant to the determination of the Defendant Schools' motion to dismiss, the Court should decline to take judicial notice of them.

## ARGUMENT

### I. LEGAL STANDARD.

It is axiomatic that courts "'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). There are two narrow exceptions to this broad prohibition: courts may consider documents (1) "physically attached" to the complaint, or (2) which the complaint "necessarily relies" upon, assuming authenticity is not contested. *Lee*, 250 F.3d at 688.

Courts may judicially notice an adjudicative fact that is not subject to reasonable dispute. Fed. R. Evid. 201(b). But while a "a court may take judicial notice of a judicial or administrative proceeding which has a 'direct relation to the matter at issue,' a court can only take judicial notice of the existence of those matters of public record . . . but not of the veracity of the arguments and disputed facts contained therein." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

Additionally, the federal rules permit "judicial notice of an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). A legislative fact is "germane to determinations of law and policy." *State v. Algers*, 764 P.2d 119, 127 (Idaho Ct. App.

3

1988). To that end, "[a] court may not take judicial notice of one party's opinion of how a matter of public record should be interpreted." *S. Cal. Edison Co.*, 300 F. Supp. 2d at 974 . Public records can be judicially noticed "to prove their existence and content, but not for the truth of the matters asserted therein." *Delta v. McCamman*, 725 F. Supp. 2d 1162, 1183–84 (E. D. Cal. 2010). Under these standards, and as detailed below, Defendant Schools' motion should be denied.

## II. DEFENDANT SCHOOLS' REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED.

### A. Defendant Schools' Interpretations of the GAO Reports and Blue Book Are Not the Proper Subject of Judicial Notice.

It is not proper for the Court to take judicial notice of the GAO reports or the select portions of the Blue Book for the simple reason that neither Relators nor the Government referenced these documents in their respective complaints. Defendant Schools do not suggest otherwise. Thus, under the bright-line standard announced by the Ninth Circuit Court of Appeals, it would inappropriate for the Court to consider these materials in connection with Defendant Schools' motion to dismiss.[1]

The Court should also refuse to take judicial notice of these materials because Defendant Schools do not merely ask the Court to take judicial notice of their *existence* but also ask the Court to accept their contested interpretation of their content, as well as their view of the legal effect of that contested interpretation.

---

[1] Defendant Schools are not using the materials in support of their motion to transfer, only for their motion to dismiss under Rule 12(b)(6). (*See* Reply to USA's Opp'n 12, 14, 16 (ECF No. 133); Reply to Relators' Opp'n 10 (ECF No.132).)

4

Specifically, Defendant Schools ask the Court to infer from the GAO reports that compliance with the Incentive Compensation Ban must not be material to the Department of Education's (the "Department") decision to pay Title IV funds because, in the past, the Department has not suspended or terminated any schools for violations of the Ban. (Reply to USA's Opp'n 13 ("Significantly, during that same time period, '[The Department] resolved most incentive compensation cases by requiring corrective actions or reaching settlement agreements, and did not limit, suspend, or terminate any school's access to financial aid.'"). Relators contest both Defendant Schools' interpretation of the GAO reports and their erroneous legal conclusions from that interpretation.

Indeed, the GAO reports support Relators' position that compliance with the Incentive Compensation Ban is material to the government's payment of funds to schools participating in Title IV programs.[2] For example, the February 2010 GAO Report specifically notes that the Department "is required to resolve program deficiencies" and "may fine a school or suspend, limit, or terminate a school's participation in Title IV programs" if it is found in violation of the Incentive

---

[2] The GAO reports also support Relators' allegations against the auditors. For example, the February 2010 GAO Report shows that the vast majority of Incentive Compensation Ban violations detected by the Department have been uncovered by compliance auditors. (Feb. 2010 GAO Report 10-12; *see also* Oct. 2010 GAO Report at 19.)

The October 2010 GAO Report notes that "[a]s part of the audit, a review of the school's compliance with the incentive compensation ban is *required*." (Oct. 2010 GAO Report at 20 (emphasis added).) The same report notes that the failure of auditors to review information about schools' compensation practices, as required by the audit guidelines, has resulted in a significant number of violations going undetected. (*Id.* at 21.)

Compensation Ban. (Feb. 2010 GAO Report at 4 & n.12; *see also* Oct. 2010 GAO Report at 33 (same).) Although Defendant Schools point out that the Department had not, as of 2010, terminated any school for violations of the Incentive Compensation Ban, the Department's decision to exercise less drastic remedies hardly establishes as a matter of law that compliance is not material.

On the contrary, when it has found violations of the Incentive Compensation Ban, the Department has (1) required the schools to stop paying illegal bonuses;[3] (2) levied significant fines, "which require[d the] school[s] to pay back federal student aid funds related to the violation"; (3) entered into settlement agreements requiring schools to pay "over $59 million" to the Department; (4) recovered over $48.5 million through qui tam lawsuits; and (5) "identified a liability of over $187 million in misspent student aid funds" in a single case. (Oct. 2010 GAO Report at 31-34.) These enforcement actions, especially the Department's efforts to recover significant sums from schools found in violation, establish that compliance with the Incentive Compensation Ban is material to the Department's decision to pay Title IV funds.[4]

Similarly, Defendant Schools ask the Court to credit their interpretation of the Blue Book, which they characterize as "sub-regulatory guidance." (Mot. for Judicial Notice 3.) But the purported quotation from the Blue Book appearing in

---

[3] Presumably, if the schools had refused to stop paying illegal bonuses, the Department would have imposed greater penalties.

[4] The October 2010 GAO Report also notes that qui tam lawsuits under the False Claims Act, like this one, are a primary way that the Department learns of Incentive Compensation Ban violations. (Oct. 2010 GAO Report at 19.) Given the report's recognition of the importance of qui tam lawsuits to the Department's enforcement of the Incentive Compensation Ban, it would be counterintuitive to interpret the report as undermining the legal validity of such suits.

Defendant Schools' reply to Relators' opposition (Reply to Relators' Opp'n 10) appears nowhere in the select portions of the Blue Book attached to Defendant Schools' judicial notice motion (ECF No.134-2). Even if it did, other Department sources directly contradict Defendant Schools' assertion that, according to the unsupplied portions of the Blue Book, "G5's express purpose is cash management." (Reply to Relators' Opp'n 10.) On the contrary, according to other "sub-regulatory guidance," G5 is "designed to achieve the following objectives," among others: "[l]ink[ing] dollars to results," "[p]romot[ing] technical and financial stewardship," and "[e]nhanc[ing] and increas[ing] program performance monitoring." (Frequently Asked Questions about G5 ("What is G5?"), *available at* www.g5.gov (last visited 1.10.15).)

Simply stated, because the Court "may not, on the basis of these reports, draw inferences or take notice of facts that might reasonably be disputed," the Court should decline Defendant Schools' judicial notice request. *Corinthian Colls.*, 655 F.3d at 999. Indeed, legal arguments are inappropriate for judicial notice. *See Blye v. Cal. Sup. Ct.*, CV 11-5046-DWM, 2014 WL 295022, at * 1 (N.D. Cal. Jan. 21, 2014) (finding the request for judicial notice to be flawed because "[a] request for judicial notice is not a proper vehicle for legal argument.").

B. **Defendant Schools' Contested Interpretation of Form 1845 Is Inappropriate for Judicial Notice.**

Similarly, Form 1845 is not the "school certification" referenced in paragraph 126 of Relators' Second Amended Complaint (ECF No.52). Indeed, Defendant Schools concede that Form 1845 was replaced by an electronic certification process

7

in the Common Origination and Disbursement ("COD") system, which has been in place since at least 2002. (*See* COD Technical Reference 2002-2003, *available at* https://www.fsadownload.ed.gov/CODTechRef.htm (last visited 1.13.15)). As a result, Form 1845 is not an appropriate subject for judicial notice at the motion-to-dismiss stage.

Additionally, the Court should refuse to take judicial notice of Form 1845 because Defendant Schools do not merely seek judicial notice of the *existence* of the form but instead ask the Court to accept their contested interpretation of it. But Relators' Second Amended Complaint includes specific allegations of fact directly contradicting Defendants Schools' interpretation of the form's language. While Defendant Schools argue that the language of the certification only requires schools to certify the *student's* eligibility to participate in Title IV loan programs (Reply to USA's Opp'n 14, 16), a student's eligibility necessarily depends on the eligibility of the institution he or she is attending—a student is not eligible unless the school is itself eligible. Thus, Relators' Second Amended Complaint alleges that "[b]y certifying that any student is eligible to receive a [Title IV program] loan, the school is certifying its own eligibility to participate in the programs, including its compliance with the Incentive Compensation Ban." (Sec. Am. Compl. ¶ 111; *see also id.* ¶ 110.)

Moreover, Form 1845 expressly supports Relators' allegations and interpretation. The form requires schools to "certify" that the student "is accepted for enrollment in an *eligible* program." (Mot. for Judicial Notice, Ex. C (ECF No.134-

1) (emphasis added).) A program is not eligible to receive Title IV funds unless it is complying with the Incentive Compensation Ban; thus, Form 1845 expressly requires schools to certify their own compliance with the Incentive Compensation Ban, just as Relators have alleged.

    C.    **Defendants Are Attempting to Alter Precedent with Irrelevant Information.**

Defendant Schools suggest that the documents show that compliance with the Incentive Compensation Ban is not a prerequisite to payment, only a condition of participation. (Reply to USA Opp'n 13-14.) However, the Ninth Circuit has specifically held that the distinction between conditions of participation and conditions of payment is not recognized in the Title IV context. *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006). Even if the documents established the proposition for which the Schools submit them, they would not alter the analysis on the Schools' motion to dismiss.

    D.    **It Is Improper for Defendant Schools to Introduce New Arguments and Evidence in Their Reply.**

The introduction of new arguments and materials at the reply stage is also improper. Defendant Schools not only ask the Court to take judicial notice of four new documents (as well as their legal interpretation of those documents), they have also submitted two new declarations (ECF Nos.132-1, 132-2, 133-1, 133-2), including from Carl Barney, the creator of the Schools' incentive compensation program, the sole owner of the Schools during the relevant time period, and a long-time Nevada resident. Defendants never submitted a declaration from Mr. Barney with their initial memoranda. Additionally, the Schools' reply contains a number of

other brand new (and erroneous) assertions, including that Defendant CollegeAmerica's Idaho Falls location was not really a "campus" when it paid bonuses to admissions consultants and financial planners there.[5]

"[W]here new evidence is presented in a reply . . . , the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (editing and quotation marks omitted). Indeed, this Court has recognized that a party will "be prejudiced by not being afforded the opportunity to respond" to new information in a reply, including new declarations filed with a reply. *Sky Capital Grp., LLC v. Rojas*, No. 1:09-CV-00083, 2010 WL 779561, at *3 (D. Idaho Mar. 2, 2010).

If the Court does take judicial notice of the documents identified by Defendant Schools—or considers any of the other new assertions contained in the Schools' reply memoranda—Relators request the opportunity to address them at oral argument, or, if the Court does not permit oral argument, through a surreply. *Zazzali v. Swenson*, No. 1:12-CV-224-EJL-MHW, 2013 WL 6181821, at *15 (D. Idaho Aug. 6, 2013) (noting that if the Court considers new arguments in a reply, the opposing party should be allowed to address them either at oral argument or through a surreply.)

---

[5] While Defendant Schools quibble over the exact date the Idaho Falls location became an official campus (Reply to Relators' Opp'n 3-4), the fact remains that Defendant CollegeAmerica paid bonuses to admissions consultants and financial planners at the Idaho Falls location long before it became a campus. As such, Idaho remains the only location where employees of both Defendants Stevens-Henager College and CollegeAmerica who received illegal bonuses can be found.

## CONCLUSION

Relators respectfully request judicial notice be denied as to each of the aforementioned documents.

DATED this 15th day of January 2015.

/s/ Brandon J. Mark
JOHN N. ZARIAN
BRANDON J. MARK
JOSEPH M. STULTZ
ALISSA M. MELLEM
PARSONS BEHLE & LATIMER
*Attorneys for Relators*

# CERTIFICATE OF SERVICE

I certify that on January 15, 2015, I caused the foregoing **RELATORS' RESPONSE IN OPPOSITION TO DEFENDANT SCHOOLS' REQUEST FOR JUDICIAL NOTICE (ECF NOS.134, 135)** to be served on the following in the manner specified:

Eric B Swartz
eric@jonesandswartzlaw.com
Mark Paul Coonts
mark@jonesandswartzlaw.com
Gerald Ritzert
gritzert@ritzert-leyton.com
Steven M. Gombos
sgombos@ritzert-leyton.com
*(attorneys for defendants Center for Excellence in Higher Education, Inc., Stevens-Henager College, Inc., CollegeAmerica Denver, Inc., CollegeAmerica Arizona, Inc., California College of San Diego, Inc., and Carl Barney via the Court's CM/ECF system pursuant to LR 5.1(k))*

A. Dean Bennett
adbennett@hollandhart.com
Eric G. Maxfield
egmaxfield@hollandhart.com
*(attorneys for defendants Shaw, Mumford & Co., P.C., and Shaw & Co., P.C. via the Court's CM/ECF system pursuant to LR 5.1(k))*

Antony L. Ryan
aryan@cravath.com
Samira Shah
sshah@cravath.com
Thomas G. Rafferty
trafferty@cravath.com
Richard H. Greener
rgreener@greenerlaw.com
Thomas John Lloyd
tlloyd@greenerlaw.com
*(attorneys for defendant PriceWaterhouseCoopers LLP via the Court's CM/ECF system pursuant to LR 5.1(k))*

Wendy J. Olson, United States Attorney
Amy S. Howe, Assistant United States Attorney
Amy.Howe@USDOJ.gov
Jay D Majors
jay.majors@usdoj.gov
*(via the Court's CM/ECF system pursuant to LR 5.1(k))*

/s/ Brandon J. Mark

4832-2611-2801.4